## SUPREME COURT.

JOHN HONE, as executor of the last will and testament of MARIA N. DE PEYSTER, deceased, agt. JOHN WATTS DE PEYSTER, individually and as executor of the last will and testament of FREDERIC DE PEYSTER, deceased.

*Trust—Entries in the stub of testator's check book, which amount to a declaration of a trust.*

In an action brought by plaintiff as executor of his mother, M. N. De P., against the defendant, as an individual and as executor of his father, F. De P., the second husband of plaintiff's mother, to recover various sums of money alleged to have been *received* by F. De P., during his wife's life-time, for and on account of his wife, and which moneys, or the rights thereto, were acquired by Mrs. De P. prior to the married woman acts of 1848 and subsequent years, and, at the trial, the check book of testator was introduced in evidence, the stubs of which contained the following entries, viz.: Under date of February 5, 1884, "Mrs. F. De Peyster, Mrs. F. G. Foster, Mr. John Hone, proceeds from sale of their portion of P. I. Co. bond and stock as per mem. on file, and including checks 2,474 and 2,475, $16,733.33, note; Mrs. De P., $5,511.11; Mrs. F., $5,511.11; Mrs. Hone, $5,511.11; check, 2,474, $50; do, 2,475, $150." Also entry made April 20, 1884, in check book, on the deposit side, as follows, viz.: "Mrs. De Peyster's legacy from Hone estate, $6,000; interest from November 22 last, as per receipt in Hone's receipt book, $172.66; total, $6,172.66:"

*Held*, that these entries indicate a declaration of trust.

The division by the testator of the money arising from the bond and stock of the Peru Iron Company, by which the amount was divided between the parties from whose interest it arose, and the widow, was, in effect, credited with her share, is a plain indication of the intention of the testator to hold such proceeds, not for the benefit of himself, but for the benefit of his widow. It was, substantially, placing himself in the situation and relation of a trustee as to these moneys, for the benefit of his wife:

*Held*, further, that the plaintiff, as executor of the estate of the widow, was entitled to recover those moneys, as funds held in trust for the testatrix by her husband. (DAVIS, P. J. dissenting.)

*First Department, General Term, October, 1884.*

Hone agt. De Peyster.

*Before* DAVIS, *P. J.*, BRADY *and* DANIELS, *JJ.*

APPEAL from judgment entered on the report of a referee.

*J. E. Ward* and *J. H. Crawford*, for plaintiff, appellant.

*G. H. Brewster* and *T. Hyslop*, for defendant, respondent.

The case was tried by and before Mr. William B. Hornblower, as referee. At the close of the evidence a motion was made on the part of the defendant to dismiss the complaint, and, in disposing of that motion, the referee pronounced the following opinion:

This is a suit brought by the plaintiff, as executor of his mother, Maria A. De Peyster, against the defendant, as an individual and as executor of his father, Frederic De Peyster, the second husband of plaintiff's mother.

Maria A. Hone, plaintiff's mother, after the death of her first husband, John Hone, Jr., the father of plaintiff, married Frederic De Peyster. This marriage took place in New York city, November 14, 1839. Mrs. De Peyster died October 30, 1869, leaving a will, which was admitted to probate by the surrogate of this county on February 1, 1870. This will was executed September 30, 1859. By it she bequeathed and devised all her estate, real and personal, to her husband, Frederic De Peyster, during his life, and, upon his death, she bequeathed out her estate to her son, John Hone, the sum of $10,000, and all the rest, residue and remainder of her estate, real and personal, she devised and bequeathed in equal shares to her son, John Hone, and her daughter, Emily, wife of Frederic G. Foster. The testatrix appointed her husband executor, and upon his death, her son, John Hone, the plaintiff, as his successor. Frederic De Peyster qualified and acted as executor under the will until his death, which took place August 17, 1882, whereupon letters testamentary were issued to plaintiff, as his successor, these letters being dated October 12, 1882. The defendant,

J. Watts De Peyster, who is the son of Frederic De Peyster, was appointed executor by his father's will, and letters testamentary were issued to him, as executor of his father, on the 25th of August, 1882. Defendant is also devisee and legatee of large amounts of property under his father's will.

The complaint alleges that various sums of money were received by Frederic De Peyster, during his wife's life-time, for and on account of his wife, which sums were the proceeds of her property or estate, and which said Frederic De Peyster always, up to the death of his wife, "recognized and treated  *  *  *  as the property of his said wife and as constituting a part of her separate estate," and which sums, upon the death of said Frederic De Peyster, came into the hands of the defendant, who now has possession of the same. The complaint also alleges that certain shares of stock, bonds and other securities, the property of said Maria A. De Peyster, including six shares of stock in the Bowery Fire Insurance Company, which were her property at the time of her second marriage, are in the hands of the defendant; that defendant obtained them as executor of said Frederic De Peyster, who, during the life-time of said Maria A. De Peyster, "treated and recognized the same as constituting a part of the separate estate of his wife," and who obtained possession of them under her will. The complaint further alleges that the defendant holds various articles of personal property belonging to said Maria A. De Peyster's estate, and received by defendant as executor of said Frederic De Peyster, who, during his wife's life-time, "treated the same as constituting part of the separate estate of his said wife, and who received the same under said will of Maria A. De Peyster." The complaint avers that the sums of money, shares of stock and other property above referred to, "though held by said Frederic De Peyster in his possession, were in each case received, held and possessed by him in trust for the use and benefit of the said Maria A. De Peyster and as trustee for her."·

The plaintiff demands judgment for the various sums of money referred to in the complaint, with interest thereon, and

that defendant account for said six shares of Bowery Fire In-
surance Company stock with the dividends received thereon
previous to October 30, 1869, by said Frederic De Peyster,
with interest thereon; and that defendant account for and pay
over and transfer to plaintiff all property received by Frederic
De Peyster under the said will of Maria A. De Peyster, and
which has come into defendant's hands, or the value thereof,
and for such further and other relief as may be proper.

The answer is substantially a general denial, except as to
some of the allegations of the complaint, with regard to the
wills, &c., which are expressly admitted.

It appears from the evidence on the trial that all of the
moneys and property claimed by the plaintiff, except, perhaps,
a silver tea-kettle, were moneys and property the rights of
which were acquired by Mrs. De Peyster prior to the married
woman's acts of 1848 and subsequent years.

The rights of a husband in his wife's property in this state
prior to 1848 were governed by the rules of the common law
as modified by the doctrines of courts of equity.

So far as chattels and tangible personal property were con-
cerned, the husband's title was absolute. His wife's possession
was his possession. The legal title was in him, with the abso-
lute and unqualified right of disposal.

So far as the wife's rights in action were concerned, the com-
mon law rule was that they reverted to her, unless the husband
reduced them to his own possession during her life-time, or
unless he survived her, in which case the title passed to him
by right of survivorship. If he died before his wife, without
having reduced her rights in action to his possession, his claims
and those of his representatives to such rights in action ceased,
and the wife's title became absolute.

Courts of equity, however, recognized the right of a married
woman to acquire a "sole and separate estate," both in chattels
and rights in action, and they enforced such rights whenever
property was transferred or conveyed for her "sole and sepa-

rate use." They also held that a husband might waive his marital rights in his wife's property, and might transfer property to a third person for his "wife's sole and separate use," or might even constitute himself trustee for his wife, so that a court of equity would enforce his wife's right to her property as her "sole and separate estate."

Such being the law at the time Mr. and Mrs. De Peyster were married, and at the time when Mrs. De Peyster's rights to the property in question accrued, we must next consider what effect the married woman's acts had upon these rights.

The acts of 1848 and 1849 (*Laws of* 1848, *chap.* 200; *Laws of* 1849, *chap.* 375), provided that "the real and personal property, and the rents, issues and profits thereof, of any female now married, shall not be subject to the disposal of her husband, but shall be her sole and separate property, as if she were a single woman, except so far as the same may be liable for the debts of the husband heretofore contracted;" and the act of 1849 provided for the transmutation of equitable separate estates to legal (*Wood* agt. *Wood,* 83 *N. Y.,* 575).

Subsequent statutes have still further enlarged the wife's rights; but it is not necessary to consider them in this connection.

These statutes, of course, were not intended to affect vested rights, and if so intended they would have been clearly unconstitutional, as taking away property "without due process of law." So far, therefore, as any husband had a vested right or interest in his wife's property at the date of the act of 1848, that right was not and could not be taken away or impaired by the act. As to the wife's chattels and tangible property acquired prior to the act of 1848, and not held in trust "for her sole and separate use," the husband's title was absolute, and the act had no effect whatsoever upon that title. This does not seem to have ever been seriously disputed. But as to the wife's rights in action, not reduced to possession by the husband prior to the act of 1848, it was at one time contended, with much force, that the husband's rights were so far inchoate

and contingent that the legislature could put an end to such rights without taking away any such vested interests as are within the constitutional protection. But the court of appeals held in *Westervelt* agt. *Gregg* (12 *N. Y.*, 202) that the legislature could not constitutionally take away the husband's rights in his wife's choses in action, any more than his rights in her chattels. In that case a legacy of $5,000 had been given by her father to Mrs. Gregg, and in September, 1846, she and her husband instituted proceedings before the surrogate of New York for the executor to account and pay over to them the amount of the legacy. Proceedings were continued until September, 1849, when a decree was made declaring that there were moneys in the executor's hands sufficient to pay the legacy, and reserving the question whether it should be paid to Mrs. Gregg or her husband. In November, 1849, the surrogate made a decree in favor of the husband, and this decision was affirmed by the supreme court and by the court of appeals. It was held that at common law the husband was entitled to the choses in action of his wife, and had the right to reduce them to possession for his own use; that this was property in the justest sense of the term, deserving protection; and that the act of 1848, so far as it undertook to interfere with such rights, was unconstitutional.

In *Ryder* agt. *Hulse* (24 *N. Y.*, 372) the same question came *again* before the court of appeals. The plaintiff in that case claimed by right of survivorship as against his wife's legatee. The property in dispute was derived from three sources. First, money which the wife had at the time of her marriage, in 1831; second, money received from the estate of her mother prior to 1848; third, moneys received by the wife during coverture, for butter, poultry, calves, &c., which the wife raised from her husband's farm, but which were treated by him and by her as her private and individual property, and the proceeds of which she invested, with his knowledge and assent, in her own name. All of these moneys, at the time of her death, in 1856, were represented by promissory notes, running in her name, she having

loaned the moneys to divers persons, taking their notes therefor. By her will she bequeathed these notes to the defendant. The defendant contended that the common law gave the husband no property in a chose in action of his wife, not collected or appropriated to his use in her life-time, and that after her death he could claim only as her administrator, and hence took subject to her right to dispose of the same by will. But the court held that "all the personal estate of a wife vests absolutely in her husband at the moment of marriage, and all she acquires during coverture immediately becomes his. This is just as true in respect to her choses in action as of any other species of her personal estate. With regard to the choses in action, she has only a contingent interest in those in which her husband has failed to reduce to possession, or assigned or disposed of in his life-time." At her death, he does not take her choses in action, as next of kin, or under any statute of distribution, "but the property is already vested in him." The court accordingly held that the right of a husband to his wife's rights in action, even though not reduced to his possession or appropriated to his own use during her life-time, was such a vested right that the legislature could not take it away.

See also, on this general subject as to the common law rights of a husband in his wife's *choses in action* by the way of survivorship, the recent case of *Olmstead* agt. *Keyes* (85 *N. Y.*, 593).

It is very clear, therefore, that this case must be decided exactly as if the "married woman's act" had not been passed, except so far as Mrs. De Peyster may be shown to have possessed an equitable estate, which by the act of 1849 became a legal estate in some or all of the property in question. Unless, however, this be the case, and unless the acts and declarations of Mr. De Peyster had recognized this property, or some portion of it, as set apart for the "sole and separate use" of his wife, so that he had become her trustee, the acts of 1848 and 1849 had no effect whatever upon his marital rights, and his title and that of his representatives to her chattels and *choses in action* were and are unaffected thereby. Her chattels:

acquired prior to the act of 1848 vested in him absolutely when acquired; her *choses in action* vested in him absolutely upon her death, even if not previously reduced to possession.

I proceed to inquire whether there is any evidence of any trust relation as to any of the property acquired prior to 1848.

The first transaction in the order in which the several matters are set forth in the complaint is the Peru Iron Company matter. It is averred that about February 4, 1846, Frederick De Peyster received from the Peru Iron Company, for and on account of his wife, the sum of five thousand four hundred and thirty-six dollars and forty-six cents ($5,436.46), being her share in certain moneys due from said company to the estate of her late husband, John Hone, Jr.

Mr. Frederick De Peyster's check-book, covering the year 1846, was produced under a *subpœna duces tecum*, and an entry on the stub of the check-book, under date of February 5th, upon the deposit side of the account, was put in evidence by the plaintiff.

This entry reads:

Mrs. F. De Peyster, Mrs. F. G. Foster, Mr. John Hone:

Proceeds from sale of their portion of P. I. Co. bond
and stock, as per mem. on file, and including
checks 2,474 and 2,475 ..................... $16,733 33

Note:

Mrs. De P.................................... $5,511 11
Mrs. F...................................... 5,511 11
Mr. Hone.................................... 5,511 11

$16,533 33
Check 2,474 ................................ 50 00
Check 2,475 ................................ 150 00

$16,733 33

'This entry does not seem to me to indicate any declaration

of trust. On the contrary, it would seem to be an appropriation to his own use of the moneys, and a reducing of them to his own possession. It was a deposit of them to his own account in the bank, where they became mingled with his own funds and entirely under his own control. The moneys belonging to the shares of Mr. Hone and Mrs. Foster would seem, by cross-references on the stubs of the check-book, to have been subsequently paid over to them; but, so far as appears, the share of Mrs. De Peyster was never paid over to her or to any one for her use, but remained in Mr. De Peyster's bank account, unless drawn out for his own use. I am constrained to conclude, as to these moneys, that there was no declaration of trust, but, on the contrary, an unequivocal reduction of them to his own possession by the husband. The name of Mrs. De Peyster, entered on the stub of the check-book, in my judgment merely indicates the source whence the money was derived. It certainly is not sufficient to establish a trust, especially when the deposit itself was directly antagonistic to the theory of a trust, being an appropriation of the funds to the depositor's own use, and a mingling of them with his own money. It must not be forgotten that in this appropriation of these funds of his wife, the husband was but exercising a clear and unquestionable legal right. The funds were his by virtue of the marital relation unless he chose to waive his title or neglected to reduce them to possession. No such presumptions or intendments will be made against him as would be made against a wrong-doer or any one who owed some duty to the person claiming to be *cestui que trust*.

The next transaction set forth in the complaint is, that on or about May 1, 1848, Frederic De Peyster received for and on account of his wife the sum of $6,000, derived from the sale of No. 194 Hudson street in the city of New York, which premises had previously been bought in about January 31, 1840, by said Frederic De Peyster for and on account of said Maria De Peyster under a foreclosure sale of a mortgage for $5,000, given by John McVicker to said Maria A De Peyster prior to her marriage to Mr. De Peyster.

The check-book of Mr. De Peyster for the period between April 30, 1846, and May 1, 1849, was not found or produced on the trial, and no evidence was offered by the plaintiff, except the recital in the deed from Mr. and Mrs. De Peyster, to show the receipt of this money by Mr. De Peyster or its disposition by him, and it is, therefore, unnecessary to further consider this transaction. There is no evidence of any trust as to this sum of money.

The next matter set forth in the complaint is to the effect that, about April 22, 1844, the executors of John Hone, plaintiff's grandfather, paid to said Frederic De Peyster, for and on account of his said wife, the sum of $6,000, the amount of a legacy to Maria Hone, deceased, a daughter of said Maria A. De Peyster by her first husband.

It appears from the testimony that plaintiff's sister Maria died in 1833, at the age of ten years. Their grandfather, John Hone, had died in 1832, leaving a will and codicil, by which he gave to each of his grandchildren living at his death the sum of $6,000, the same to be paid to each of them upon their respectively attaining the age of twenty-one years, or marrying. Maria Hone would have attained the age of twenty-one years, had she lived, in December, 1843. In April, 1844, the amount of her legacy was paid by the executor of the grandfather, and Mr. Frederic De Peyster received the amount with interest on or about April 22, 1844. It seems to have been supposed by all the parties that Mrs. Frederic De Peyster was entitled to the whole of this legacy as next of kin to her deceased daughter, although, by the statute of distribution, she was entitled only to one-third.

Mr. Frederick De Peyster's check-book shows an entry under date of April 20, 1844, on the deposit side, as follows:

Mrs. De Peyster, legacy from Hone estate ........ $6,000 00
Interest from November 22 last, as per receipt in
  the Hone receipt book ..................... 172 66

Total ................................. $6,172 66

Hone agt. De Peyster.

This entry, for the reasons already stated in connection with the Peru Iron Company matter, I do not regard as evidencing a trust but rather the contrary, an appropriation of the fund to his own use.

The next matter in the complaint calling for examination, is as to the Bowery Fire Insurance Company stock.

At the time of her marriage to Mr. De Peyster, Mrs. De Peyster was the owner of six shares of the capital stock of the Bowery Fire Insurance Company. The certificate was in her name, and so remained up to the time of her death, and stands in her name now. But this fact did not indicate any intention on the part of her husband to treat it as her "sole and separate estate," in the equity sense of that phrase. It was, at most, merely refraining from exercising his marital right to reduce the stock to his own possession. Upon her death, the stock passed absolutely to him by right of survivorship. It is not shown that he did or said anything as to this stock, which indicated any intention to waive his marital rights. On the contrary, he always collected the dividends from the date of his marriage to the date of his wife's death, thereby asserting and exercising *pro tanto* his right to reduce the same to his possession. I do not find any evidence which would justify me in concluding that this stock was set apart as a trust, or became the "sole and separate estate" of Mrs. De Peyster, so as to cut off his common law rights as husband.

The only other allegations of the complaint remaining to be considered are to the effect that the defendant holds certain bonds, household furniture and other personal property, chattels and effects belonging to said Maria A. De Peyster's estate, and received by defendant as executor of said Frederic De Peyster.

The only evidence offered in support of these allegations relates to two silver water pitchers and trays, silver kettle and a Dresden china centre-piece.

As to the silver pitchers and trays there is no testimony except that of Mrs. Emott; plaintiff's daughter, who testified

she was an inmate of her grandmother's family for about twenty years, from the time she was a little child until she was married in 1864. After her marriage she frequently saw her grandmother and occasionally visited her down to the time of her death. She heard the remark made in Mr. Frederic De Peyster's presence that these pitchers were Mrs. De Peyster's pitchers. She did not remember whether she had heard that remark made more than once. She did not know when the pitchers were purchased. This hardly comes up to the requisites of legal evidence as to title, and it certainly would not justify a finding by me that Mrs. Frederic De Peyster was the owner of these pitchers and trays, even if I am to assume that they were purchased after the married woman's act of 1848.

As to the Dresden china centre-piece, Mrs. Emott testifies that she knows that it was given by her father to her grandmother; but when asked how she knows, she answers that she "always heard so; my father said so." I do not understand that the learned counsel for the plaintiff contends that this is legal evidence of title, or that there is any legal evidence of title in the case as to this article.

As to the silver tea-kettle, Mrs. Emott testified that she heard the remark made in her grandfather's (Mr. De Peyster's) presence that Mr. Foster had given it to her grandmother (Mrs. De Peyster). She is sure of the fact that the remark was made in her grandfather's presence, though she does not remember by whom it was made. Mr. De Peyster did not contradict the remark. She does not know when this tea-kettle was given to her grandmother. She does not remember when she began to notice it. "I suppose as soon as I was old enough to go to the table." She was there more or less from the time she was two years old. It would appear, from another portion of her testimony, that she began to live with her grandmother in 1844, as she says she lived there for about twenty years before her marriage, and she was married in 1864.

This does not seem to me sufficient evidence on which to

base a finding either that Mr. De Peyster recognized his wife's ownership of this article as part of her "sole and separate estate," or that it was given to Mrs. De Peyster after the married woman's act of 1849, so as to be hers under the statute. One or the other of these facts must be found in order to support a judgment for the plaintiff as to this article.

The learned counsel for the plaintiff contends with great force and earnestness that they have made out a case within the rule laid down in *Whiton* agt. *Snyder* (88 *N. Y.*, 299). In that case it was held that there was no presumption that property in the wife's possession was obtained prior to the act of 1848, even though the marriage of the parties took place prior to that act, but, on the contrary, the property being in the wife's separate and individual possession, at a time when her absolute ownership was possible, the presumption is that she acquired the property since the act of 1848. It was also held that a wife's separate and personal possession of specific articles of personal property draws after it the presumption of ownership.

But in the case now under consideration the evidence tends to show that the articles in question, and especially the silver tea-kettle, were acquired prior to 1848, and there is no evidence that they were ever in the "separate and personal possession" of Mrs. De Peyster. On the contrary, they appear to have been part of the table ware and household furniture in use by husband and wife jointly. The court of appeals, in *Whiton* agt. *Snyder*, say that as to wearing apparel and ornaments, "their very character and use implies a personal gift, and a separate possession in which the husband does not share. * * As to articles of a different character, such as furniture and household goods, adapted to the use of and used by the family generally and in their common possession, a different rule must prevail. Although specific articles may be spoken of as the wife's, or as got for her, the difficulty of establishing an executed gift by showing a delivery, or a separate and personal possession, remains. Such cases must stand on their facts, and can

rarely be brought within the range of a presumption of separate ownership." Among the articles in dispute in that case were a carriage and a clock. As to these the court say : " We cannot assign either to the personal possession of the wife alone. They were for the common use of both, adapted to such use." And the court state that they would " have great doubt about these articles but for one fact in the case," viz., that defendant, on his examination before the surrogate, swore that these articles were the property of his deceased wife.

This case of *Whiton* agt. *Snyder* seems to me, therefore, an authority for the defendant when carefully examined and applied to the facts of the case.

It is further contended, however, by the learned counsel for the plaintiff, that Frederick De Peyster admitted his wife's title to the property referred to in the complaint, by assenting to and assisting in the drawing of her will, in which she made a bequest of $10,000, and disposed of her property "real and personal." It appears that Mrs. De Peyster's will was drawn in September, 1859, by the late Mr. Edward H. Owen, of this city. It further appears that a bill was rendered to Mr. De Peyster for this service, and was paid by him. It is further conceded by counsel for the defendant, for the purposes of this motion, that Mrs. De Peyster had no other personal property than that referred to in the complaint, though she owned some real property in this city, a lot and dwelling-house in University place. In spite of the ingenious argument of counsel for the plaintiff, I am not satisfied that this is an admission of Mr. De Peyster's title to the personal property in question, especially as it is not shown and cannot be presumed that her husband knew the contents of the will. The mere fact of her making a will with his assent is not sufficient to show an admission on his part that she had personal property to bequeath, in the absence of knowledge of the contents of the will, since it is conceded that she had real property on which the will should operate, and he may very well have supposed that the will referred exclusively to that. But even if he had known the contents

of the will, I do not think I could draw from that circumstance the inferences claimed to be deducible therefrom, in the absence of more direct and positive testimony as to the title of the property in dispute.

As all the property in controversy, so far as the evidence shows, was acquired prior to 1848, the wife could have no separate estate in it, except by her husband "divesting himself of the property and engaging to hold it as a trustee for her separate use," and this must be done "by a clear, irrevocable gift, either to some person as trustee, or by some clear and distinct act of his" (*Ryder* agt. *Hulse*, 24 *N. Y.*, 379; *McLean* agt. *Longlands*, 5 *Ves.*, 79; *Schouler on Husband and Wife, sec.* 192; 1 *Bishop on Law of Married Women, sec.* 731).

I find no evidence of any such act on the part of Mr. De Peyster, and am therefore constrained to hold, notwithstanding the able and ingenious argument and brief of the counsel for the plaintiff, that no title has been shown, either legal or equitable, in Mrs. De Peyster or her representatives. It becomes, therefore, unnecessary to consider the other questions presented by counsel for the defendant as to alleged defects in the proof necessary to show a cause of action against the defendant either individually or as executor.

The motion to compel plaintiff to elect between the cause of action against the defendant individually, and that against the defendant as executor, will be denied, and the complaint will be dismissed, with costs.

The plaintiff may submit requests to find on or before the 21st instant.

DANIELS, *J.*—The division by the testator of the money arising from the bond and stock of the Peru Iron Company, by which the amount was divided between the parties from whose interest it arose, and the widow was in effect credited with $5,511, is a plain indication of the intention of the testator to hold such proceeds, not for the benefit of himself, but for the benefit of his widow.

Hone agt. De Peyster.

It was substantially placing himself in the situation and relation of a trustee as to these moneys, for the benefit of his wife, as well as to the other two shares for the benefit of the persons entitled to the other parts of the money. There was the same reason for believing that he intended to hold one-third of the proceeds for her, as there was that he intended to hold the other shares, as he did, for the benefit of the other persons, to whom two-thirds of the money was in fact paid by him.

The same observations are alike applicable to the sum of $6,000, received on account of a legacy from the Hone estate, which had been bequeathed to her.

The plaintiff, as executor of the estate of the widow, was entitled to recover those moneys, as funds held in trust for the testatrix by her husband.

The judgment should be reversed and a new trial ordered.

I concur with DANIELS, J., JOHN R. BRADY.

DAVIS, P. J. (dissenting).— This opinion of the referee is elaborate and well considered, and *our* own careful examination of the case has constrained *us* to the conclusion that upon all the questions, both of equity and law, involved in the case, it is correct. We accept it, therefore, as an accurate disposition of the case, although we think, considering all its circumstances, it would have been as well not to have awarded costs to either party.

It seems to us manifest, from the evidence in the case, that both Mrs. and Mr. De Peyster in their life-time acted in reference to her property, which she had received from the estate of her former husband, as though it remained her own, and with the expectation or belief that the ultimate disposition made of it, by her will, would be valid and enforceable after the decease of both. But as she acquired and owned her personal estate prior to the act of 1848, and the other acts familiarly known as the married women's acts, it was not subject to the provisions of those acts, as is now well settled by the authorities cited by the learned referee; and the acts performed by Mr. De Peyster

in reference to it and its management were such as at common law were sufficient to clothe him with the legal title, as husband, of all the personal estate reduced to possession, and with the title, by survivorship, of all not reduced to actual possession. Their misapprehension of their rights cannot be held to change or affect the legal title of Mr. De Peyster, both during her life and after her decease.

We think it our duty, under the circumstances, in affirming the judgment, to do so without costs of the appeal.

The judgment is accordingly affirmed, without costs.